# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| SPRINT SPECTRUM L.P., <br> d/b/a SPRINT PCS, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF PLATTE, MISSOURI, <br><br> Defendant. | No. 06-6049-CV-SJ-DW |

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment on Count I of its Complaint (Doc. 9). For the following reasons, the Court denies Plaintiff's motion and grants summary judgment in favor of Defendant on Count I of the Complaint.

### I.   Background

This lawsuit involves Plaintiff Sprint Spectrum's ("Sprint" or "Plaintiff") application for a special use permit to construct a cellular tower in Platte County, Missouri. In May 2005, Sprint entered into a lease with Our Savior Evangelical Lutheran Church for a portion of its property located at 14155 Highway N ("the Church Property") where Plaintiff intends to construct a telecommunications tower. The Church Property is zoned AG - Agricultural District, and is located adjacent to numerous residences. Section 400.130C of the Platte County Zoning Order of 1990 allows a telecommunications tower as a special use within an agricultural district.

On June 21, 2005, Plaintiff initially filed for a special use permit to construct a 150-foot monopole tower. Defendant's Planning and Zoning Commission ("Commission") denied this application on September 13, 2005. On March 7, 2006, Plaintiff filed a new application for a

Special Use Permit to construct a 153-foot stealth tower disguised as a flagpole. Plaintiff states that this revised design was in response to the objections raised to the original application. On April 11, 2006, the Commission denied Defendant's second application and issued its Findings of Fact and Conclusions of Law.

Plaintiff contends that in denying Plaintiff's application for a special use permit, the Defendant violated the Federal Telecommunications Act of 1996 ("TCA") by failing to meet the "in writing" and "substantial evidence" requirements of 47 U.S.C. § 332(c)(7)(B)(iii).

## II. Telecommunications Act of 1996

The TCA was enacted "to provide for a pro-competitive, de-regulatory national policy framework designed to accelerate . . . private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition." H.R. Conf. Rep. No. 104-458, at 113 (1996). In addition, the TCA was intended "to promote competition and reduce regulation in order to secure lower prices and higher quality services for . . . telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Telecommunications Act of 1996, Pub. L. No. 104-104 (1996). Wireless telephone service was one of the many telecommunications technologies Congress considered when enacting the TCA.

With respect to the construction of telecommunications facilities, Congress recognized zoning decisions by state and local governments had created an inconsistent array of requirements, which inhibited both the deployment of personal communications services and the rebuilding of a digital technology-based cellular telecommunications network. H.R. Rep. No. 104-204, at 94 (1995). Despite this recognition, Congress also acknowledged "there are

legitimate State and local concerns involved in regulating the siting of such facilities . . . such as aesthetic values and the costs associated with the use and maintenance of public rights-of-way." Id. at 94-95. As a result, Congress enacted 47 U.S.C. § 332(c)(7) to "preserve[ ] the authority of State and local governments over zoning and land use matters except in . . . limited circumstances." H.R. Conf. Rep. No. 104-458 (1996), at 207-08.

In 47 U.S.C. § 332(c)(7), Congress established substantive and procedural limitations upon the authority of state or local governments to regulate the construction of facilities for wireless communication services. Local zoning authorities may not unreasonably discriminate among providers of functionally equivalent services, may not make zoning decisions which prohibit or effectively prohibit the provision of personal wireless services, and may not make zoning decisions premised on concerns regarding the environmental effects of radio frequency emissions associated with wireless telephone service. 47 U.S.C. §§ 332(c)(7)(B)(i)(I), 332(c)(7)(B)(i)(II), 332(c)(7)(B)(iv).

To ensure the enforcement of these limitations, Congress delineated how zoning decisions are to be made and provided a mechanism for judicial relief for persons aggrieved by decisions inconsistent with these requirements. 47 U.S.C. §§ 332(c)(7)(B)(iii), 332(c)(7)(B)(v). Decisions denying approval for the placement, construction, or modification of personal wireless service facilities must be both "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In addition, if a state or local government acts in a manner inconsistent with these statutory requirements, any person adversely affected by the action may, "within 30 days after such action . . . commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v). By structuring the TCA in this manner, Congress

3

explicitly preserved local zoning authority over the siting of wireless facilities, while permitting judicial oversight as to the manner in which such decisions are made. 47 U.S.C. §§ 332(c)(7)(A), 332(c)(7)(B)(v).

### III. Discussion

Summary judgment under Rule 56 is appropriate only if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322 (1986). In reviewing claims under 47 U.S.C. § 332(c)(7)(B)(iii), the Court's determination is limited to whether the decision of the local zoning authority satisfies certain procedural requirements and is limited to the administrative record. Town of Amherst, N.H. v. Omnipoint Comm. Entr. Inc., 173 F.3d 9, 16 n. 7 (1st Cir. 1999). In considering whether the decision challenged here is in writing and supported by substantial evidence, the Court evaluates the decision for evidentiary support based on the written record before the Commission. Accordingly, Count I of Plaintiff's Complaint may be resolved on the record without trial.

### A. "In Writing" Requirement

Section 332(c)(7)(B)(iii) provides in part that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless facilities shall be in writing." The various circuits have interpreted the "in writing" requirement differently and the Eight Circuit has not yet ruled on the issue. See New Par v. City of Saginaw, 301 F.3d 390, 395 (6th Cir. 2002) (noting the split and outlining the various interpretations); S. W. Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 59 (1st Cir. 2001) (giving a summary of the different interpretations).

4

Following the reasoning applied in the First and Sixth Circuits, the Court will find the "in writing" requirement is satisfied if the decision is separate from the written record, describes the reasons for denial, and contains a sufficient explanation of the reasons for denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons. New Par v. City of Saginaw, 301 F.3d at 395-96.

There is no dispute that the Commission's decision is separate from the written record and describes the reasons for denial. Rather, Sprint argues that the Commission's decision fails to provide a sufficient explanation of the reasons for denial because the written decision merely recites the general standards for denial specified in the relevant ordinance. Sprint further argues that because the provided reasons are not tied to specific evidence in the record, the denial is generic and could be used as a basis to deny any special use permit. Sprint contends that, as a result, a reviewing court is forced to guess at which portions of the record support Defendant's findings and cannot conduct a meaningful review of the decision denying its application for a special use permit.

The Court disagrees. Under the New Par standard , a "sufficient explanation" is one that allows a reviewing court to *evaluate* the record for support, there is no requirement, nor need there be, that the decision specifically identify the portions of the record upon which the denial was based. Although a more specific explanation of the reasons for denial would be of greater value, especially to Plaintiff, the Court finds that the reasons stated are sufficient for the purposes of review of the record for substantial evidence. Accordingly, the Court finds that the decision of the Commission satisfies the "in writing" requirement of section 332(c)(7)(B)(iii).

      B.      Substantial Evidence

A local zoning authority decision denying a request to place, construct, or modify personal wireless services facilities must be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B)(iii). Substantial evidence is less than a preponderance, but more than a scintilla. Metro PCS Inc. v. City of San Francisco, 400 F.3d 715, 725 (9th Cir. 2005). A decision is supported by substantial evidence if the record contains such evidence as a reasonable mind might accept as adequate to support a conclusion. Id. Review under this standard is essentially deferential, such that courts may neither engage in their own fact-finding nor supplant a local zoning entity's reasonable determinations. Cellular Telephone Co. v. Town of Oyster Bay, 166 F.3d 490, 494 (2d Cir. 1999). In applying this standard to the facts of a given case, the written record must be viewed in its entirety, including all evidence supporting both parties. Id.

The Commission denied Sprint's Special Use Permit application because it did not "conform to the applicable requirements, regulations and standards of the Platte County Zoning Order of 1990, including but not limited to the standards set forth in Article VIII, Section 400.760, Subsection D." The Commission's written decision further states as findings that Sprint's application violated the standards found in subsections 8(A)-(D).

Sprint argues that there is insufficient evidence in the record to support the Commission's denial based on aesthetic concerns and the potential negative impact on property values. As an initial matter, Sprint notes that few residents expressed any objection to the tower even though all residents in the vicinity were notified of the plan and the public meeting and were given an opportunity to object. Public opposition to a proposed tower may be considered by a local zoning authority, however, minimal opposition from residents alone does not constitute substantial

6

evidence. See Omnipoint Comm. v. City of White Plains, 175 F. Supp. 2d 697, 713 (S.D.N.Y. 2001) reversed on other grounds, Omnipoint Comm. v. City of White Plains, 430 F.3d 529 (2d Cir. 2005) ("two letters—a scintilla of evidence if there ever was one."). Although courts have found the amount of community opposition relevant to the substantial evidence evaluation, no clear quantitative standard has emerged from the case law.

The record in this case indicates that opposition to the tower was not limited to the objections from five adjacent residents. In addition to the residents, the Platte County R-III School District and the City of Platte opposed the construction of this particular tower in this particular location. The Commission also relied on the Platte County Department of Zoning and Planning report ("the Report") recommending that the application be denied. The Report was based in part on a site visit and provided detailed reasons why the special use permit should not be granted. After review of the record, the Count finds that the evidence of opposition in this case exceeds a mere scintilla. Accordingly, the Court cannot overturn the decision of the Commission on this basis.

Sprint also argues that the objections based on aesthetic concerns do not constitute substantial evidence. As a threshold matter, a local zoning authority may consider aesthetic concerns in the siting of communications towers under the TCA. Southwestern Bell Mobile Systems, Inc. v. Todd, 244 F.3d 51, 61 (1st Cir. 2001); Aegerter v. City of Delafield, 174 F.3d 886, 891) (7th Cir. 1999) ("Nothing in the [TCA] forbids local authorities from applying general and nondiscriminatory standards derived from their zoning codes, and we note that aesthetic harmony is a prominent goal underlying almost every such code."). Although generalized expressions of concern with the adverse visual impact of the facility cannot serve as substantial

7

evidence, aesthetic concerns can constitute substantial evidence if they are grounded in the specifics of the case. Southwestern Bell Mobile Systems, Inc. v. Todd, 244 F.3d at 61. Specifically, courts have disapproved of generalized aesthetic concerns that are applicable to any tower, regardless of location. See Oyster Bay, 166 F.3d at 495 (resident comments suggested misunderstanding of "what the proposed cell sites would actually look like" noting that transmitters were located on catwalk of water towers and painted the same color as the background, thus preventing most residents from seeing them); see also Ominpoint Corp. v. Zoning Hearing Bd. of Pine Grove Township, 181 F.3d 403, 406 (3rd Cir. 1999) (noting that objections of adjacent residents were undermined by the fact that a 114-foot monopole was surrounded by large 80 to 90-foot tall trees).

       The Platte County Zoning Order expressly permits the Commission to deny a special use permit on the basis of aesthetics and adverse visual impact. Here, the objecting residents and the Planning Department raised specific concerns about the location and height of the proposed tower in relation to the adjacent properties and surrounding neighborhood. For example, the record contains pictures simulating the view of the proposed tower. In addition to other evidence in the record, these pictures demonstrate that the tower would not be obscured by trees or other structures and would dominate the visual landscape. The record also indicates that the tower would be within the sightlines of the adjacent residential developments. Sprint apparently concedes that the tower will have an adverse visual impact, but argues that in order to achieve adequate wireless coverage towers must be constructed near populated areas. The Court is sympathetic to Sprint's position, but there is substantial evidence in the record supporting the Commission's finding that the proposed 153' tower in this case would have an adverse visual

impact on an area without natural or other features that would obscure the tower from onlookers.

Aside from aesthetic concerns, a related issue exists as to whether the tower would have a negative impact on property values in the surrounding community. For example, one adjacent resident, a real estate broker, expressed concerns that the tower would have a significant negative effect on property values. Sprint rebutted this evidence with a study performed in North Carolina indicating that property values are not impacted by the construction of adjacent communications towers. Sprint argues that neither the residents, including the real estate broker, nor the Platte County Department of Zoning and Planning are qualified to make anything more than conclusory opinions regarding the impact of the tower on surrounding property values. Sprint argues that these opinions cannot qualify as substantial evidence because they are unsupported by appraisal studies or some other expert report. The Court agrees in part.

Other federal courts have found that under the substantial evidence standard, a local zoning authority cannot simply rely on speculative or unsubstantiated opinion regarding the diminution of surrounding property values. See, e.g., Ominpoint Corp. v. Zoning Hearing Bd. of Pine Grove, 181 F.3d at 409. The cases do not require plaintiff expert evidence on property values to be rebutted by contrary expert evidence in every instance, but merely that defendants must be able to identify some evidence in the record to support a zoning decision based on a diminution of surrounding property values. Here, Defendant has been unable to do so and therefore this is not a valid ground for denial of the special use permit in this case.

After review of the Commission's written decision, the record and the parties' arguments, the Court is satisfied that the Commission denied the special use permit based on the specific facts of this case and not because of an opposition to communications towers in general. The

9

Commission's concerns with the negative aesthetic impact of the proposed tower were grounded in the specific characteristics of the proposed location, design and surrounding property. Furthermore, there is no evidence in the record indicating Defendant would always find towers incompatible with the character of the surrounding property. In fact, the Commission has approved Sprint's four previous applications to construct communications towers at other sites within the county. For these reasons, the Court finds that the record provides a sufficient evidentiary basis for the Commission's decision to deny the special use permit.

### IV. Conclusion

Having found that the denial of the special use permit by Platte County satisfies the requirements of section 332(c)(7)(B)(iii), the Court must DENY Plaintiff's Motion for Summary Judgment on Count I of the Petition (Doc. 9) and GRANT summary judgment in favor of Defendant on Count I of the Petition.

Date: October 11, 2007

/s/ Dean Whipple
Dean Whipple
United States District Judge